The next case on the call of the docket is agenda number three, case number 124992, People of the State of Illinois v. Justin Knapp. Ms. Kelly Marie Taylor, you may proceed. Ms. Taylor Good morning. May it please the Court, Counsel, I'm Kelly Taylor from the Office of the State Appellate Defender on behalf of the appellant, Justin Knapp. The Second District Appellate Court erred in affirming the Circuit Court's dismissal of Mr. Knapp's first-stage postconviction petition, where it applied too stringent of a standard and misunderstood Mr. Knapp's claim. There's no question here that the majority applied too stringent of a standard. The State does not even dispute this. Instead, the State argues that the majority reached the correct result, but the majority cited to boilerplate first-stage postconviction law, but expected the defendant, a non-attorney, to meet second-stage standards. The result cannot be correct at the first stage when the majority applied second-stage standards. This Court made itself clear in its decision in Hodges that the survival, that the threshold for survival at the first stage is so low because these postconviction petitions are drafted by This Court emphasized that the allegations have to be taken as true, and they may only be summarily dismissed as frivolous or patently without merit if the petition has no arguable basis in law or in fact. At the first stage, Mr. Knapp was only required to state the gist of a constitutional claim, which he did. Mr. Knapp alleged a violation of his right to testify on his own behalf. The right to testify is a fundamental right, and it's one of only five decisions that is solely the defendant's to make. Courts should be leery of denying a right this important at the first stage, especially without the input of counsel. Mr. Knapp alleged that counsel told him erroneously that because his version of what happened that night was not supported by evidence, that he could not testify. Taking all well-pleaded facts as true, this advice was incorrect. Under Illinois law, there is no requirement that corroborative evidence is required in order to testify on one's own behalf. The majority of the appellate court expected Mr. Knapp to prove that but for counsel's errors, there was a reasonable probability that the result of the proceeding would have been different. However, this is not the standard at the first stage. The standard is that it only has to be arguable that the result of the proceedings would have been different, which here it was arguable. As Justice McLaren's dissent pointed out, Mr. Knapp's proposed testimony would have attacked the credibility of the witnesses Aviccia and Pedroza, that this was a gang-related argument. At trial, the State repeatedly said that gang affiliations ran deeper than friendship, and that was the only reason that the State could give as to why Mr. Knapp would stab his best friend since the third grade. Mr. Knapp's testimony would have also explained why he was carrying the gas cans into the house, and this is because he witnessed Mr. Rodriguez burning his blood-stained shirts in this fire pit near the house. At trial, the State called the gas cans the most powerful evidence that Mr. Knapp knew he committed a criminal offense. And at trial, he was not allowed, thanks to counsel's erroneous advice, he was not allowed to present this testimony to rebut the most powerful evidence. Also, there were several questions from the jury, which is evidence that the evidence here was not as overwhelming, maybe, as the State seemed to think it was. It's certainly arguable here that the results would have been different had Mr. Knapp testified. The majority here, though, improperly and unfairly expected Mr. Knapp to overcome the second-stage presumption of trial strategy, which is not allowed at the first stage. And as discussed before, because this was based on a misapprehension of law, the advice could not have been trial strategy. The result here could not have been correct, not only because the majority held Mr. Knapp's petition to too stringent of a standard, but also because it misunderstood his claim. We do not disagree with the State's assertion on page 16 of its brief that there are different types of scenarios in the right-to-testify context. Mr. Knapp's claims fall firmly into the third category, that but for counsel's erroneous advice, he would have testified. Mr. Knapp has limited legal knowledge. Before dropping out of high school, he was enrolled in special education classes. He had an attorney at trial, and he trusted his trial attorney to know the law in Illinois and to give him proper advice. Mr. Knapp had no reason to doubt counsel when, off record, counsel told him that he could not testify to his version of events without corroborative evidence. Counsel told him he was legally precluded from testifying to his version of events because he did not have corroborative  Sotomayor, did the defendant make any kind of statement to the Court that indicated any hesitation in giving up his right to testify? He did not. And that's not irrational here. The Court told him that he could not testify to his version of events without corroborative evidence. Counsel told him it is his right to testify, but the Court doesn't know what Mr. Knapp's proposed testimony would have been, and Mr. Knapp has no reason not to trust his attorney. So he's not claiming that he was, you know, pressured into not testifying. He's claiming that he trusted counsel's advice, which he later found out was wrong, and that is why he gave up his right to testify, because he was told that he legally could not testify here. The majority here says that requiring a trial court to go beyond verifying that the decision not to testify is knowing and voluntary would invade the attorney-client relationship. If you're going to, if we're proud judges reading this, knowing, you know, should, would it be appropriate to say why are you, why did your attorney, why are you not testifying? Is that, is there a danger there? Well, as Justice McClaren pointed out in his dissent, I believe he said he was being another attorney to whom one could say, so you could confirm what your first attorney told you. So that was a bit of an ironic statement there. But in this case in particular, again, counsel, the judge could ask him what counsel told him, and he could waive that attorney-client privilege. But I don't think that he or other people who fit into this third category would. At the time, he didn't know that he could have testified. At the time, he thought counsel's advice was correct. I mean, why wouldn't he? So at the time, counsel's advice to him seemed right, and I don't know that the judge has to inquire further into that. Choosing so in his affidavit, he actually addressed this, and he said, Mr. Knapp said the answers, the answers elicited by the court regarding whether he wished not to testify were the direct result and proximate cause of his attorney's representations to him that there might be a potential or there must be corroborative evidence supporting his testimony. So he acknowledged that he agreed with all of the trial court's questions, and there wouldn't necessarily be pressure and the other things that courts sometimes ask about, because he was choosing at the time, he was choosing not to testify based on the attorney advice he did not yet know was incorrect. The judge, like I said before, the judge told him it was his decision, but the judge did not know what his proposed testimony was, and the judge did not know that there was not corroborating evidence, which we know and the attorney should have known is not required, but Mr. Knapp would not have known that. At the risk of sounding like a broken record, there is no reason for Mr. Knapp not to have trusted his attorney when he told him that he could not testify absent this corroborating evidence. The majority here also found that there was no contemporaneous assertion made to the court or at any time, but the defendant would ask this honorable court to find that Brown and its progeny do not apply in cases such as this one where a defendant reasonably relies on counsel's erroneous advice to his detriment. In its recent decision in Hartsfield v. Dorothy, the Seventh Circuit said it was troubled by the obligation that Illinois case law appears to impose upon a defendant to contemporaneously assert a right to testify in circumstances where defense counsel has just silenced the defendant. Indeed, it is illogical to require a defendant to prove that he reasserted his right to testify after counsel, who he should be able to trust, told him he was not legally permitted to testify. This is also true of the slippery slope fallacy relied on by the State and that is present in Coleman and Brown that cautions that any time counsel advises a defendant not to take the stand, a defendant has an arguable claim of ineffective assistance of counsel. This is not like many of the cases where defendants are claiming that they got bad advice because counsel gave their honest advice that, hey, if you testify, it's going to hurt the case. This is a totally different scenario where counsel told him incorrectly, you cannot testify because your claim is not backed up by this corroborative evidence. So those we'd like to make a distinction between those types of cases, and then that's why we would ask that this Court holds that Brown and its progeny do not apply in cases such as that one or cases such as this one, where defendants are told that they're legally precluded from testifying, not merely that it would be harmful to the case if you were to testify. Counsel, when these discussions are all off the record, how would we ever sort out one defendant's assertion that, I mean, who didn't testify in any one of many cases that this kind of a conversation took place? So that's the purpose of the, you know, the first stage of the Post-Conviction Hearing Act, is to bring about these off-record conversations, which is why it's incredible that the majority here found that the conversation was rebutted by the record. These off-record conversations between clients and defendants raised in the first stage post-conviction petitions cannot be rebutted by the record when they're by its nature off the record. So that's really, I mean, that's really the purpose of the first stage, is to, it's such a low standard, it's such a low threshold, to just move these complaints from the first stage to the second stage. And that's all we're asking for here. We're not asking for a new trial. We're just merely asking that this move to the second stage, so that counsel can be appointed and counsel can help sort out any inconsistencies or any off-record advice and just really clarify even what a defendant is trying to get across in his post-conviction petition. These, this Court knows, I mean, the first stage petitions are often hard to read, full of legalese, because these, you know, these people, they just, they don't have legal knowledge. And especially when you're making a claim of a fundamental right, it just makes sense for the threshold to be so low to get that attorney, help sort through the petition, make it easier for the trial judge to read, make a determination. And that's what we're asking for here. Counsel, can we ever rely on the communications between the trial judge and the defendant about whether or not he's voluntarily agreeing not to testify? Maybe in certain of the three right to testify contexts, but not in this one. In this one, you know, in the counsel gave me bad advice or erroneous advice that I cannot testify context. Here, with the trial court, what they go through, of course, you know, of course a defendant's not going to say that he feels pressure or that it's not his choice when he thinks that the advice is correct and that the decision he made is for the right one. So you agree with the California court that the defendant is being asked to make a contemporaneous decision about things that he may or may not know? And we shouldn't rely on the information he provides to the court? Correct. At least, definitely not in this context. For these reasons, Mr. Knapp respectfully requests that this honorable court vacate the circuit court's summary dismissal of his post-conviction petition and reverse the appellate court's decision and remand the cause for second stage post-conviction proceedings. Thank you. Thank you, Ms. Taylor. Thank you, Mr. Knapp. Counselor, Your Honors, good morning. May it please the Court. My name is Alistair Whitney, Assistant Attorney General on behalf of the people. Your Honors, I'd first like to address some of the claims made by opposing counsel in her opening argument, namely that the appellate court misconstrued defendant's claims and that they applied the wrong standard. First, as this Court knows, this case arrives to this Court under novo review, so this Court may look beyond the reasoning of the appellate court and simply affirm the judgment. Moreover, in defendant's appellate brief below, defendant relied on three cases, people v. Palmer, people v. Whiting, and people v. Youngblood, in which it was alleged that counsel prevented defendant from testifying. So it was proper for the appellate court and reasonable for them to construe defendant's claim as one that counsel prevented him from testifying. Now, before this Court, defendant seems to abandon that argument and argue that counsel's  advice to not testify, and as to this, defendant has failed to establish that he was even arguably prejudiced by counsel's advice to not testify, and moreover, that defense counsel was – defense counsel's performance, rather, was not arguably deficient. This is because defendant wanted to testify at trial as to events before and after the attack on his victim. Defendant did not wish to testify or contest the factual basis of the attack itself as set forth at trial. Defendant's proposed testimony was that despite having met co-defendant once before at a house party in Chicago, he did not know him. Defendant also wanted to testify that the reason he attacked – the reason for the argument and his subsequent attack on the victim had nothing to do with gangs, but rather had to do with a dispute over a girl. As to events happening after the attack, defendant wished to testify that the only reason he was seen holding two gas cans at the party house he fled to after the attack was simply because he was removing the gas cans from the backyard fire pit where co-defendant was burning his clothes and destroying evidence of the attack that had just happened. But it's important to note here, and also defendant wanted to testify, that he saw co-defendant wash blood from his hands at the party house and he speculated that he saw blood on co-defendant's clothing. But it's important to note here that what defendant did not wish to testify to. The defendant's testimony would not have set forth the claim of self-defense, self-defense of others. Defendant's testimony also would not have disavowed his role in the attack. Defendant merely wanted to testify as – to a different motive for attacking his best friend, that it had nothing to do with gangs and it was just simply about a girl. And he also wished to testify that the reason he was holding those two gas cans was simply removing them from the backyard fire pit, which actually shows further coordination in the immediate aftermath of the attack with co-defendant. So it cannot be said here that defendant's proposed testimony would have even arguably changed the outcome of trial or that he was even arguably prejudiced by not testifying. In addition, much of the contents of defendant's post-conviction petition, in particular the statements of co-defendant Luis Rodriguez made to police and at his plea hearing, are also very damaging to defendant's case. Co-defendant told police that in the immediate aftermath of the attack, defendant ran up to co-defendant's side, brandishing a knife and bragged, and I quote, that's why they call me machete. In addition, defendant's testimony would have placed defendant at the party house in the immediate aftermath of the attack within minutes of the victim's friend calling police and getting the life-saving medical attention that the victim needed at that point. And last, defendant also said that, or excuse me, co-defendant also told police that the reason that defendant was looking for the gas cans in an attempt to destroy the clothing and evidence of the attack that had just occurred. So for these reasons, defendant cannot even establish arguably that trial counsel provided deficient or that he was prejudiced by counsel's performance. And also for these reasons, no reasonable trial counsel would have advised defendant, given the contents of defendant's proposed testimony, that testifying would have been a good idea in this situation. Defendant's testimony would have actually been very damaging to his defense and theory of the case, which was that he was simply following his friend's home to make sure rather to the train station to make sure that they were safe. Again, defendant's testimony would have placed him at the party house within minutes of the attack as he fled and instead of at his best friend's side as he lay dying in the Aldi's parking lot. And this in conjunction with the overwhelming evidence established at trial showing that defendants exhibited consciousness of guilt when he saw oncoming police, parked police cruisers approaching the house. He fled inside. When police entered the home and made contact with defendant, they observed that he appeared to be fake sleeping, that he was sweaty and out of breath. When they took defendant into custody, he began yelling gang slogans and gang threats about his gang and threatened the lives of the owners of the home as well as the arresting police officers. In addition, and as for reasons I already mentioned, defendant's proposed testimony would have arguably strengthened the state's case of accountability that defendant, regardless who did the stabbing, was accountable for co-defendant's conduct. And this is because defendant's proposed testimony would have again showed further coordination with co-defendant in destroying co-defendant's evidence, he claims, in the immediate aftermath of the attack. So for these reasons, no reasonable attorney would have recommended to defendant that it was a good idea to testify. Is there a difference between, though, between giving a recommendation it's not a good idea to testify and telling somebody they can't? Yes, Your Honor. And we would classify the latter, that you cannot testify, as a claim where defendant counsel prevented defendant from testifying. And if that is the case, then that is positively rebutted by the record in that, at trial, defendant was admonished as to his right to testify. He repeatedly declined testifying and told the trial judge that he understood that the right he was giving up and still persisted in not wanting to testify. And counsel added at the end of that admonishment that he had discussed this right with defendant at great length and that he respected defendant's decision. But we think defendant's claim here is best read that counsel gave him bad advice, causing defendant to give up his right to testify, rather than counsel prevented me from testifying, which is positively rebutted by the record and by this Court's decision in People v. Brown. I also wanted to point out on that note, Your Honor, that defendant's reliance on the Seventh Circuit case, Hartsfield v. Dorothy, factually concerned a claim where defendant argued that defense counsel prevented defendant from testifying. And we don't think that that's what defendant is arguing here. So that is factually distinct from the facts of this case. Your Honors, as a final note, at oral argument at the proceedings below, defendant 's appellate counsel was asked what difference this proposed testimony would have made, and appellate counsel replied, I don't know. For these reasons, defendant has failed to show that he was even arguably prejudiced by trial counsel's sound advice to not testify, and he has failed to show that trial counsel's performance was even arguably deficient. And if there are no further questions, the people ask that this Court affirm the judgment of the appellate court. Thank you. Thank you, Mr. Whitney. Ms. Taylor? Your Honors, I briefly just want to touch on a few things that opposing counsel said in his argument. So Mr. Knapp, actually, he claimed actual innocence in his post-conviction petition. So while he may not have said some of the phrases that he needed to to make his argument totally clear, that's not uncommon in the first stage proceedings. As well as, yes, he did include Mr. Rodriguez's statements, some of which were very unfavorable for Mr. Knapp. However, Mr. Rodriguez, he did plead guilty in exchange for nine years in this case. Everything he said, you know, may not have been completely accurate. But an attorney would have known what to include and what not to include in the post-conviction petition. So if this had advanced to the second stage, Mr. Knapp could have had some help with things to make his claim more understandable. And, you know, an attorney would have helped him, you know, to leave out some of these unfavorable things that co-defendant said while he was questioned by police. Also, it doesn't matter whether counsel, a reasonable attorney would have advised him to testify or to not testify, ultimately it was his choice. Even if counsel had told him, you know, this is just, it really goes against your best interest, it would really be detrimental, it is ultimately his choice, one of his only five choices, totally his to make. So even if it would not have been favorable for him, it was his decision to make. And it's one that he should be able to make with knowing all possibilities and knowing the law and not have been told that he could not testify because he didn't have corroborating evidence. So it was totally his decision, and whether counsel would have thought it was a good idea doesn't matter in this context. And also, his affidavit was pretty clear, even if some of his post-conviction petition was not. He did make some, you know, the State says that they're treating this as a bad advice case, not as a precluded from testifying, or it was erroneous advice case. And he did say, Mr. Knapp said, counsel told me that because there was no evidence to support my story, I could not testify. He said the answers elicited from me by the court regarding whether I wish not to testify were the direct result and proximate cause of my attorney's representations to me that there must be corroborative evidence supporting my testimony. And then he also said, had he known that my right to testify was not contingent on any extrinsic evidence, I never would have waived my right to testify at trial. So his affidavit was pretty clear, regardless of maybe what the majority interpreted. Justice McLaren also read it in the third, the third boiler point, the third point in the right to testify context. And does the Court have any further questions? Thank you so much, Your Honors. Thank you, Ms. Taylor. Case number 124992, People v. the State of Illinois v. Justin Knapp will be taken under advisement as agenda number three. Thank you, Ms. Taylor and Mr. Whitney for your prologue and this morning.